# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HENRY FRANCIS,**<br>    Plaintiff,<br><br>v.<br><br>**UNITED STATES**<br>**DEPARTMENT OF JUSTICE,**<br><br>    Defendant. | Case No. 15-1683 (CRC) |

## MEMORANDUM OPINION

In January 2014, Plaintiff Henry Francis submitted a Freedom of Information Act ("FOIA") request to the Executive Office for United States Attorneys ("EOUSA"), seeking specific information pertaining to his federal prosecution and sentence. EOUSA's failure to locate responsive records forms the basis of this lawsuit. The Department of Justice ("DOJ"), of which EOUSA is a component, has moved for summary judgment on the basis that it fulfilled its FOIA obligations by conducting a reasonably adequate search for responsive records. Because EOUSA's declaration supports its contention, and Francis has offered nothing to doubt the reasonableness of the search, the Court will grant DOJ's motion for the reasons explained more fully below.

## I. Background

In 1994, a jury in the U.S. District Court for the Middle District of Florida convicted Francis of conspiring to kill a federal official and of using interstate commerce facilities in the commission of a murder for hire. As a result, Francis is serving a life sentence. See United States v. Francis, No. 8:16-cv-1656-T-23TGW, 2016 WL 3501303, at *1 (M.D. Fla. June 27, 2016); Compl. 12. In January 2014, Francis submitted a FOIA request to EOUSA seeking:

> [T]he evidence that the United States probation officer Mr. Chris Castellano relied upon to make his factual determination to based [sic] my offense level, as he asserted that, the guideline for an 18 U.S.C. 1117 is found in section 2A1.5. That section provides for a base offense level of 28 [citing paragraphs 45 and 51 of his presentence investigation report ("PSR")].

Francis also requested:

> [T]he evidence that the United States probation officer . . . Castellano relied upon to make his factual determination that I violated 1111, 1114, 1116 or 1119 [citing paragraph 1 of his PSR][;] . . . the evidence Special Task Force Agent Mr. U.K. Miller, presented to the Jamaican government seeking the arrest of two Jamaican native[s], Mr. Collin Rose, Bull and Mr. Wayne, to stand trial in the United States in an indictment filed in the Middle District of Florida . . . by a Grand Jury for an 18 U.S.C. 1117 conspiracy between them, Henry Francis and Jacqueline Dennis, to murder ASUA [sic] Darken and Task Force Agent Bahnsen [citing pages eight and nine of his PSR][;] and the Actual documents of what date [Agent Miller] made contact with the Jamaican government, what transpired between agent Miller and the Jamaican government, and what was the response that he received from the Jamaican government [citing trial transcripts].

Compl. Ex. E, ECF No. 1 at pp. 20-21 ("FOIA Request").

On March 20, 2015, EOUSA informed Francis that his "request seeks records which may be available from the US Probation Office in Florida" and suggested that he "contact their offices directly to seek possible release of the records." Gov't Ex. B, ECF No. 31-1. Francis appealed EOUSA's determination to the Office of Information Policy ("OIP"), claiming that it was non-responsive to his request. Gov't Ex. C. On July 13, 2015, OIP affirmed EOUSA's action "on modified grounds." Id., Ex. D. The Chief of the Administrative Appeals Staff wrote that "EOUSA conducted [a reasonably adequate] search and could locate no responsive records subject to the [FOIA] in its files." Id.

Francis filed this civil action in October 2015. A "further search of the records relating to Mr. Francis" located no responsive records. Gov't's Stmt. of Material Facts ¶ 8.

2

## II. Legal Standard

FOIA imposes a general obligation on the government to provide agency records to the public. 5 U.S.C. § 552(a). The statute carves out explicit exceptions to this disclosure obligation, id. § 552(b), but "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). Congress did not intend, however, "to reduce government agencies to full-time investigators on behalf of requesters." Judicial Watch v. Export–Import Bank, 108 F. Supp. 2d 19, 27 (D.D.C. 2000). As a result, "FOIA creates only a right of access to records, not a right to personal services," Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C. 1985), aff'd, 808 F.2d 137 (D.C. Cir. 1987), and it confers jurisdiction in the district court only to enjoin an agency from improperly withholding records that are in its possession and control at the time of the FOIA request. "Accordingly, when an agency does not possess or control the records a requester seeks, the agency's non-disclosure does not violate FOIA because it has not 'withheld' anything." DiBacco v. U.S. Army, 795 F.3d 178, 192 (D.C. Cir. 2015) (citing Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 150 (1980)). Nevertheless, a FOIA requester who is dissatisfied with the agency's no-records response "may . . . challenge the adequacy of the agency's search." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 67 (D.C. Cir. 1990).

FOIA cases are appropriately resolved on summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). When an agency's search is questioned, it must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir.

3

1999)) (internal quotation marks omitted). An agency's search is judged by the individual circumstances of each case. See Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). The central question is whether the search itself was reasonable, regardless of the results. See Cunningham v. U.S. Dep't of Justice, 40 F. Supp. 3d 71, 83-84 (D.D.C. 2014). Therefore, "[t]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). Agencies need not scour every database, but rather should conduct a "good faith, reasonable search of those systems of records likely to possess requested records." Cunningham, 40 F. Supp. 3d at 83. Agency declarations, especially from individuals coordinating the search, are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

Courts can decide—and award—summary judgment solely based on agency affidavits and declarations that are "relatively detailed and non-conclusory." Id. Important details include what records were searched, who did the search, and what search terms or processes were used. See Judicial Watch., Inc. v. Dep't of the Navy, 971 F. Supp. 2d 1, 2 (D.D.C. 2013). A plaintiff can rebut an agency declaration by raising "substantial doubt[s] as to the reasonableness of the search, especially in light of 'well-defined requests and positive indications of overlooked materials.'" Cunningham, 40 F. Supp. 3d at 84 (quoting Founding Church of Scientology of Washington, D.C. v. NSA, 610 F.2d 824, 837 (D.C. Cir. 1979)).

4

**III. Analysis**

In his opposition, ECF No. 28, Francis finds fault with the Declaration of David Luczynski, who is an Attorney Advisor for EOUSA. Indeed, Luczynski's statements about the initial search conducted in the U.S. Attorney's Office in the Middle District of Florida ("MDFL") in response to Francis' FOIA request are generalized and uncorroborated. See Luczyinski Decl. ¶ 5, ECF No. 25-2. But EOUSA has also proffered the declaration of the employee at the local office in Florida who actually searched for responsive records during the course of this litigation. As a result, any claim based on the pre-litigation search is moot. See Saldana v. Fed. Bureau of Prisons, 715 F. Supp. 2d 24, 26 (D.D.C. 2010) (noting that "[e]ven if Saldana's claims were not moot at the time he filed this complaint, . . . they have since become moot by the FBI's additional searching, processing, and release of records"); cf. Bayala v. United States Dep't of Homeland Sec., Office of Gen. Counsel, 827 F.3d 31, 36 (D.C. Cir. 2016) (holding "question of administrative exhaustion . . . moot" where agency's administrative decision "ha[d] been overtaken by new and different in-court disclosures and explanations").

The Court turns now to the relevant search. Megan D. Hoobler is a Paralegal Specialist for the MDFL's Criminal Division and that office's FOIA coordinator. Hoobler Decl. ¶ 1. Her "responsibilities include coordinating with [EOUSA] to respond to all FOIA requests for records located within the MDFL." Id. Hoobler states that upon her office's receipt of a FOIA request, the Legal Information Network System (LIONS) is searched to determine "1.) if there is a case within the MDFL regarding the subject matter of the request; 2.) if the requestor is a defendant; 3.) if the case is active or closed; and 4.) the Assistant United States Attorney (AUSA) to whom the matter is assigned." Id. ¶ 5. If the requester is a defendant, as was Francis, his identity is confirmed by comparing personal identifiers in LIONS, i.e., a defendant's "Marshal number,

date of birth, and social security number." Id. An email is sent to the assigned AUSA and his or her legal assistant, who are then "asked to search for any responsive documents." Id. ¶ 6. The physical files are retrieved and labeled with "an additional instruction that the file is not to be purged without prior approval from the FOIA coordinator." Id. ¶ 7. "Once all records are received, the assigned [FOIA] processor sorts through the records to identify those responsive to the request" and forwards any such records to EOUSA for processing. Id. ¶ 8.

Although both the paralegal specialist and FOIA processor who handled Francis' request have since retired, Hoobler declares that she "received extensive training from both" individuals, and "that the [foregoing] search process . . . was in place at the time of Mr. Francis's request." Id. ¶ 2. Most importantly, in response to this lawsuit, Hoobler "personally reviewed the FOIA file and search notes," retrieved Francis's "physical files," and "performed a second, thorough search . . . for potentially responsive records." Id. ¶ 9.

Hoobler reasonably describes the first part of Francis' request as seeking "evidence utilized by the United States Probation Office (USPO) in determining Mr. Francis's offense level and advisory guidelines calculation." Id. ¶ 10. She explains that the U.S. Attorney's Office "does not maintain records or evidence utilized by the USPO. And, although the PSR and objections thereto were in the files, there were no other records that indicated what evidence the Probation Officer relied on in determining Mr. Francis['] offense level or advisory guidelines calculation." Id. Consequently, no responsive records were found.

As for the remaining parts of the FOIA request, Hoobler states that she "found no . . . evidence nor documentation describing" evidence "presented to the Jamaican government seeking the arrest of 'Mr. Collin Rose, Bull and Mr. Wayne,'" nor did she find "documents memorializing a meeting between agent [U.K. Miller] and the Jamaican government." Id. ¶¶ 11-

6

12. Because an excerpt of trial testimony supplied by Francis suggested that such a meeting might have been "memorialized in a FD-302 form," Hoobler located "eight FD-302s," but she declares that those forms were not "responsive to Mr. Francis's request as they do not discuss a meeting between an agent and the Jamaican government[,] [and] [n]one mention[s] an agent U.K. Miller." Id. ¶ 12.

Hoobler was not required to answer Francis' questions or to opine about the "evidence" he requested. See Espinoza v. Dep't of Justice, 20 F. Supp. 3d 232, 245 (D.D.C. 2014) ("The FOIA places no obligation on an agency to answer questions disguised as a FOIA request . . . or to create documents or opinions in response to an individual's request for information, nor is an agency obligated to obtain a duplicate of or to re-create a record [not in its control or possession] in order to fulfill a FOIA request.") (citations and internal quotation marks omitted; alterations in original); Saldana, 715 F. Supp. 2d at 19 (noting "'[t]o the extent [a] plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests'") (quoting Anderson v. Dep't of Justice, 518 F. Supp. 2d 1, 10 (D.D.C. 2007)) (alterations in original). And Hoobler has otherwise described a good-faith search reasonably calculated to locate responsive records maintained by EOUSA.[1] As a result, this Court has "no further judicial function to perform under the FOIA." Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).

---

[1] Francis appears also to seek equitable relief against the United States Probation Office. See Compl. ¶¶ 32-33. But "as an arm of the court," the probation office "is not subject to FOIA's disclosure requirements," and any challenge to information contained in the presentence reports that office is charged with generating "is wholly irrelevant to the FOIA analysis." Espinoza, 20 F. Supp. 3d at 245.

**IV. Conclusion**

For the foregoing reasons, the Court will grant DOJ's motion for summary judgment and enter judgment in its favor. An Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
DATE: August 21, 2017            United States District Judge